### PENNSYLVANIA INDEMNITY CO. v. McLAUGHLIN.

### No. 16096.

District Court, E. D. Pennsylvania.
April 18, 1934.

Drinker, Biddle & Reath, of Philadelphia, Pa. (Francis Chapman and Frederick E. S. Morrison, both of Philadelphia, Pa., of counsel), for plaintiff.

Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa., for defendant Virginia E. McLaughlin.

DICKINSON, District Judge.

The demurrer interposed should be sustained.

### Discussion.

One gratifying feature of this case is that we have been aided by a very helpful oral argument, followed with very helpful briefs. It is always comforting to the court to feel that the opposing interests are in the hands of competent counsel whose analysis of the fact situation, out of which the question presented for a judicial answer arises, may be accepted. In consequence of the view we have taken no discussion is called for; but as the cause will doubtless have an appellate experience, we give our analysis of the facts.

The question which arises out of this fact situation has several turnings which make it not a little difficult to state it in simple terms. The plaintiff is called in this record "Agency Company." This name is helpful because the plaintiff is not an insurance company but an insurance broker, and also because the similarity in the corporate names of the different companies concerned is somewhat confusing. One of these companies was engaged in the business of insuring against what are known as "casualty losses." This company is in consequence called in this record "Casualty Company." There was another company whose business was to insure against fire and a number of other enumerated kinds of losses, which is referred to as "Fire Company." There is a feeling so widespread that we may call it universal among business men, that no business can be successful unless it is based upon, to some extent, a monopoly. In consequence every one in business strives to secure it. One way of securing it is through the law. It may be a law granting an exclusive license, a patent, a copyright, or a trade-mark right. There are innumerable ways of securing such monopoly by extra legal methods. One way is by means of combinations, pooling agreements, or otherwise among the leaders in any line of trade. Another is by maintaining friendly relations with prospective customers so as to secure their trade. An effective way of doing this is to have a controlling interest in the business of the customer so that it will deal with no one else. The plaintiff Agency Company followed this latter method. It wished to be the exclusive agent of the Casualty Company and the Fire Company and thus have all the agency business these companies had. To accomplish this the Agency Company first became the owner of all the stock of the Casualty Company, and became also the owner of 786 shares of stock in the Fire Company. As the Casualty Company owned the remaining stock of the Fire Company, this gave the plaintiff control of the business of both the Casualty and the Fire Companies. This resulted in the plaintiff having the exclusive agency for the business of both companies, and this business indeed constituted the whole business of the plaintiff. The law at the time was, or was supposed to be, that a consolidated return might be filed for the three concerns. The advantages of this to the taxpayer are obvious. One or two of the companies might be in the receipt of a large taxable income upon which, if separate returns were made, a tax would be paid. One or more of the other companies might have as large an operating loss. If a consolidated return was made, no taxable income would appear, and the company or companies which returned an income would escape the payment of the tax otherwise assessable to it. The consequence, of course, was that a consolidated return was made for the years 1926 and 1927. This return was accepted and allowed. In December, 1928, the Agency Company sold its 786 shares of stock in the Fire Company to the Casualty Company for the consideration of $157,200. Thereafter the Casualty Company owned all the capital stock of the Fire Company, and the Agency Company owned all the capital stock of the Casualty Company.

It might, of course, turn out to be that while it was to the advantage of the taxpayer to file a consolidated return for one or more years, it might be to the advantage of each company or to their joint advantage to file separate return for another year. A provision of the law, however, was that companies which had elected and been permitted to file a consolidated return could not thereafter file separate returns without the sanction of the taxing authorities. In deference to this requirement of the law, a consolidated return was filed for the three companies for the year 1928, the companies not having requested permission to file separate returns. The Commissioner refused to compute the tax on the basis of a consolidated return for the three companies, but, as we understand it, computed a tax against the Agency Company on the basis of a separate return and against the Casualty Company and the Fire Company on the basis of a consolidated return as to them. In assessing the tax against the plaintiff, the Commissioner found a profit of $117,000

(afterwards reduced to $98,250) to have accrued to the plaintiff from its sale of Fire Company stock to the Casualty Company. The taxes as thus assessed were paid, but a claim for a refund was duly made based upon the following propositions:

1. The right of the three companies to file a consolidated return.

2. Section 142(a) of the Revenue Act of 1928 [26 USCA § 2142(a)] required the three companies to file a consolidated return for that year.

3. The sale of Fire Company stock by the Agency Company to the Casualty Company, being an inter company transaction, could result in neither taxable gain nor loss.

4. The act of 1928 does not prohibit an insurance company taxable under section 204 (26 USCA § 2204) joining in a consolidation return with a corporation taxable under section 13 (26 USCA § 2013).

A further claim was made against the $98,250 gain imputed to the plaintiff on the sale of the Fire Company stock because in 1929 the plaintiff was obliged to surrender to the Casualty Company not only the $157,-200 paid for the Fire Company stock, but $97,800 more, or $225,000 in all. The plaintiff instead of realizing a profit was out its 786 shares of Fire Company stock and $97,-800 more. This claim was rejected, as was also the return demanded, and this action was brought.

The statement of claim averring the cause of action above outlined was met by a demurrer that it shows on its face that the tax, the payment of which was thus exacted, was a lawfully assessed tax. This presents the question to be answered.

The experienced and very capable counsel for defendant states the question as follows:

May a corporation taxable under section 13 of the Revenue Act of 1928 join with an insurance company, taxable under section 204, in a consolidated return?

It is in effect admitted that the three corporations are within the verbiage of the provision of the act permitting consolidated returns. Before 1926 no practical difficulties were encountered in so doing. In that year, however, a difficulty was created in that insurance companies of this kind to which the Fire Company belongs were subjected to a lower rate of tax than were corporations such as the plaintiff. The taxing authorities, however, at first ignored this distinction by taxing the consolidated income at the higher rate and permitted consolidated returns. It was

found, however, that they did not possess the power to tax fire insurance companies at this higher rate, and the assertion of the power to so do was withdrawn. The Revenue Act of 1928 (26 USCA § 2001 et seq.), the year for which the tax here in question was levied, did away with the difference in the rate of taxation, thus removing this obstacle to a consolidated return, but added an express prohibition to the joining after the year 1928 of fire insurance companies with other companies in a consolidated return.

The tangled web in which the question presented is thus enmeshed is shown by an analysis and recapitulation of these elements. We have:

1. A law defining affiliated companies and permitting consolidated returns.

2. A law requiring them to adhere to an election once made and forbidding them of themselves to change from a consolidated to separate returns.

3. A consolidated return was here filed and accepted on which the tax was levied.

4. A law requiring fire insurance companies, such as here, to make a special form of return and subjecting them to a lower tax rate than other companies.

5. A regulation of the taxing authority permitting the filing of consolidated returns notwithstanding but subjecting all the affiliated companies to the payment of the higher tax.

6. A ruling that no companies could be taxed at a higher rate than that imposed by the taxing act, and hence that insurance companies could not join in a consolidated return with companies subject to a higher tax rate.

7. A law making all corporations subject to the like tax rate.

8. A law requiring companies which had filed a consolidated return for 1927 to be taxed on same basis for 1928, but forbidding insurance companies to join with other companies in a consolidated return after the tax year of 1928.

The force of the argument addressed to us is felt. It has been clearly presented and strongly pressed by able counsel. The question here is the tax to be levied under the act of 1928. Section 142(a) of that act (26 USCA § 2142(a) requires that affiliated companies which made a consolidated return for 1927 be taxed on the basis of a like return for 1928 but on a different return basis for 1929. It is a little difficult to accept the thought that a taxpayer has no right to make the kind of a return which he is required to make. At

the same time the return which is to be followed may be construed to mean a proper return so that the act may be read that corporations, which had the right to file a consolidated return for 1927 and did so, shall file a like return for 1928.

It would be interesting to follow the arguments pro and con if they have not been forestalled by an authoritative ruling. The Board of Tax Appeals has so ruled. American Exchange Sec. Corp. v. Commissioner, 29 B. T. A. ——, promulgated September 20, 1933.

The question thus becomes whether we are controlled by this ruling. Until overruled by an appellate court, we think we should follow it.

The demurrer is accordingly sustained, and the question of law raised determined in favor of the defendant, with leave, etc. If the parties believe the legal and fact merits of the cause may be determined by a judgment for defendant, this may be moved for. If plaintiff desires to amend by recasting its statement of claim, leave is granted.